**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **JOE LYNN PADDOCK,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )   **No. CIV-05-707-R** |
| | ) |
| **STATE OF OKLAHOMA[1] AND** | ) |
| **ERIC FRANKLIN, Warden,** | ) |
| | ) |
| **Respondent.** | ) |

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254, seeking a writ of habeas corpus. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent has filed a response to the petition and the state court trial transcripts ("Tr."). Petitioner has filed a reply, and thus, the matter is at issue. For the reasons set forth below, it is recommended that the petition be denied.

Petitioner is challenging his convictions in Case No. CF-2001-264, District Court of Logan County, of conspiracy to manufacture a controlled dangerous substance (Count One); unlawful possession of a controlled dangerous substance (methamphetamine) with intent to distribute (Count Two); knowingly concealing stolen property (Count Four); unlawful possession of a radio set capable of receiving law enforcement transmissions (Count Eight); and possession of a controlled dangerous substance without a tax stamp

---

[1]Respondent contends Eric Franklin, Warden of James Crabtree Correctional Center, is the only proper Respondent and seeks dismissal of the State of Oklahoma as respondent. Pursuant to Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, the state officer having custody of the applicant is the proper respondent. Accordingly, the State of Oklahoma should be dismissed as a respondent.

(Count Nine), all after former conviction of a felony.  Petitioner was also convicted of the misdemeanor offenses of driving while license suspended (Count Five); operating a vehicle with expired tag (Count Six); and failure to carry security verification (Count Seven).  The trial court sentenced Petitioner to fifty years imprisonment on both Counts One and Two; ten years imprisonment on Counts Four, Eight and Nine; for the misdemeanor offenses Petitioner was sentenced to one year imprisonment on Count Five, time served on Count Six and thirty days in the county jail on Count Seven.  The trial court ordered the sentences on Counts One and Two to be served consecutively and the remaining sentences were ordered to be served concurrently to each other and concurrently with Count Two.

Petitioner appealed his convictions, alleging (1) there was insufficient evidence to support his conviction for failure to carry security verification (Count Seven) and (2) numerous instances of prosecutorial misconduct. Response, Ex. B. The Oklahoma Court of Criminal Appeals (OCCA) reversed Petitioner's conviction in Count Seven due to insufficient evidence and affirmed Petitioner's remaining convictions.  Response, Ex. C. With respect to Petitioner's prosecutorial misconduct claim, the OCCA, reviewing only for plain error, found the prosecutor's references to Petitioner's exercise of his right to remain silent and personal attacks constituted errors that were harmless as to Petitioner's guilt but not as to sentencing.  *Id.*  The OCCA reduced Petitioner's sentences in Counts One and Two from 50 years imprisonment to 25 years imprisonment, to be served consecutively to each other, with the sentences in the remaining counts to be served

concurrently with Count Two and with each other.  *Id.*  Petitioner states that he has filed

no applications for post-conviction relief.  Petition at 2.

Petitioner raises a single ground for relief based on prosecutorial misconduct.

Petition at 4-5.  Respondent admits that Petitioner has exhausted his state court remedies

and that the petition is timely.  Respondent contends that the OCCA's decision that the

instances of prosecutorial misconduct were harmless as to the jury's finding of guilt is

not contrary to or an unreasonable application of Supreme Court law.

## **Discussion**

I.    Standard Governing Petitions For Habeas Corpus

For claims that have been adjudicated in state court, this Court may grant a writ

of habeas corpus relief only if that adjudication (1) resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law,

as determined by the Supreme Court, or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of evidence presented in the State court

proceeding.  28 U.S.C. § 2254(d)(1) and (2).

A state court's decision is contrary to clearly established federal law if it applies

a rule that contradicts the law set forth in Supreme Court cases, or confronts a set of facts

that are materially indistinguishable from a decision of the Supreme Court and

nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

A state court decision involves an "unreasonable application" of Supreme Court

precedent if the state court "applies [the Supreme] Court's precedents to the facts in an

objectively unreasonable manner."  *Brown v. Payton*, 544 U.S. 133, 125 S.Ct. 1432, 1439

(2005); *Williams v. Taylor*, 529 U.S. at 407.  Further, a state prisoner seeking habeas relief based on alleged erroneous factual determinations must overcome by clear and convincing evidence the presumption of correctness afforded state court factual findings. *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004).

II.   Prosecutorial Misconduct

Petitioner alleges that prosecutorial misconduct deprived him of a fair trial and resulted in "the jury imposing the maximum possible term of incarceration on each count of the information."  Petition at 4.  Although in his petition Petitioner alleges that the prosecutor "made repeated references" to his "right to remain silent" and "personal attacks" that influenced the jury, he has not identified any remarks on which he bases his claim.  *Id.* at 4-5.  Rather, Petitioner merely refers to a page attached to the petition which contains an excerpt from his direct appeal brief challenging certain statements by the prosecutor in closing argument during the sentencing stage which allegedly referred to Petitioner's failure to testify or present evidence on his behalf at trial.[2]  *Compare* Petition at 5A and Response, Ex. B at 21.  In his direct appeal brief, Petitioner asserted that these arguments made during the sentencing phase influenced the jury to return with punishment recommendations of 50 years imprisonment each for Counts One and Two and the maximum sentences available on the misdemeanor convictions.  Response, Ex. B at 23.  As previously stated, the OCCA granted Petitioner relief to the extent such prosecutorial misconduct affected Petitioner's sentencing proceeding.

---

[2]Petitioner's trial was divided into two stages. The first stage required the jury to determine his guilt or innocence. The second stage required the jury to recommend a penalty.

To the extent Petitioner seeks habeas relief in the form of further sentence modification based on comments made by the prosecutor during the sentencing stage of the trial, such claim fails.[3]  Sentencing involves the application of state law which is not cognizable on federal habeas review unless Petitioner shows that the challenged sentence is outside the statutory limits or otherwise unauthorized by law.  *See Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000). The OCCA modified Petitioner's sentences for his convictions of conspiracy to manufacture methamphetamine (Okla. Stat. tit. 63, § 2-408) and possession of methamphetamine with intent to distribute (Okla. Stat. tit. 63, § 2-401),[4] both after former conviction of a felony, to twenty-five years imprisonment on each count, which sentence is well with the maximum sentence of life set by the Oklahoma legislature for such offenses by a prior convicted felon.[5]  Further, Petitioner's sentences

---

[3]The corrective action taken by the OCCA is both authorized by Oklahoma law and constitutional. Okla. Stat. tit. 22, § 1066 confers upon the OCCA the power to review the entire record to determine the appropriateness of the judgment and the sentence, and to  exercise its authority to modify a sentence.  *See Livingston v. State*, 795 P.2d 1055, 1058 (Okla. Crim App. 1990). Furthermore,  if a state appellate court has authority to exercise its own discretion and modify a jury sentence on appeal as a matter of state law, no due process violation occurs when it does so.  *Carbray v. Champion*, 905 F.2d 314, 317-318 (10th Cir. 1990) (citing *Clemons v. Mississippi*, 494 U.S. 738, 746 (1990)).

[4]The trial record and the OCCA summary opinion make clear that with respect to Count Two, Petitioner was charged with and convicted of possession of a controlled dangerous substance (methamphetamine) with intent to distribute. The undersigned notes that state court documents attached to the response contain some discrepancies as to the relevant statutory citation for this offense.  Response, Exs. A and B. However, such discrepancy is not an issue before the Court in this action and in any event, would not affect the findings and recommendation made herein.

[5]Because Petitioner had a prior felony conviction, his sentences were enhanced under Oklahoma's general recidivist statute, Okla. Stat. tit. 21, § 51.1 (2001).  *See* Response, Ex. A (Judgment and Sentence in Case No. CF-2001-264).  The provision regarding sentencing after former conviction of a felony states in relevant part:

[E]very person who, having been convicted of any offense punishable by imprisonment in the State Penitentiary, commits any crime after such conviction, within ten (10) years of the date following the completion of the execution of the sentence, and against whom the District Attorney seeks to enhance punishment pursuant to this section of law, is punishable therefor as follows:

(continued...)

5

for the remaining felony convictions – knowingly concealing stolen property (Okla. Stat. tit. 21, § 1713), unlawful possession of a radio set capable of receiving law enforcement transmission (Okla. Stat. tit. 21, § 1214), and possession of a controlled dangerous substance without a tax stamp (Okla. Stat. tit. 68, § 450.1) – were within the range set for a prior convicted felon.  Okla. Stat. tit. 21, § 51.1(A)(2),(3).  Finally, Petitioner's sentences for the remaining misdemeanor offenses of driving while license is suspended (Okla. Stat. tit. 47, § 6-303) and operating a vehicle with expired tag (Okla. Stat. tit. 47, § 1151), were within the range set for these offenses.  Thus, as Petitioner's sentences in the present case are authorized by law and within the range allowed by law, Petitioner's challenge to the prosecutor's closing arguments during the sentencing stage fails to state a cognizable claim for habeas relief.  *See Dennis v. Poppel*, *supra*.

The undersigned notes that in responding to the petition, Respondent has broadly construed Petitioner's habeas claims to include the same claims that were raised on direct appeal.  Response at 9.  Moreover, in his reply to the response, Petitioner again refers

---

[5](...continued)

. . .

2. If the offense of which such person is subsequently convicted is such that upon a first conviction an offender would be punishable by imprisonment in the State Penitentiary for any term exceeding five (5) years, such person is punishable by imprisonment in the State Penitentiary for a term in the range of twice the minimum term for a first time offender to life imprisonment. If the subsequent felony offense does not carry a minimum sentence as a first time offender, such person is punishable by imprisonment in the State Penitentiary for a term in the range of two (2) years to life imprisonment.

3. If such subsequent offense is such that upon a first conviction the offender would be punishable by imprisonment in the State Penitentiary for five (5) years, or any less term, then the person convicted of such subsequent offense is punishable by imprisonment in the State Penitentiary for a term not exceeding ten (10) years.

Okla. Stat. tit. 21, § 51.1(A)(2),(3).

generally to the prosecutor's "repeated references" to his right to remain silent and personal attacks and further alleges that the prosecutor portrayed him as "an evil being and a dirty old man." Petitioner's Reply at 2. Affording Petitioner's pro se pleadings a liberal interpretation, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the undersigned has therefore construed Petitioner's pleadings to include not only the previously discussed claim specifically stated in the petition, but also claims of prosecutorial misconduct during the first stage of his trial, as set forth in his direct appeal brief.

Petitioner claimed on direct appeal that the prosecutor elicited testimony from the arresting officer, Logan County Sheriff's Deputy Mark Vaughn, regarding Petitioner's post-arrest right to remain silent. Response, Ex. B at 11-12. He further alleged that the prosecutor commented on his right to remain silent during the first stage closing argument. *Id.* at 13. Petitioner also alleged that the prosecutor influenced the jury by "portraying him as an evil being," specifically, by arguing facts not in evidence and by engaging in personal attacks on Petitioner. *Id.* at 15-19.[6]

In reviewing Petitioner's claims of prosecutorial misconduct, the OCCA found that Petitioner did not object to the challenged comments, and therefore the Court reviewed the alleged misconduct for plain error only. Response, Ex. C at 3. Without enumerating each specifically contested comment, the OCCA found that the prosecutor "made repeated references during the trial concerning [Petitioner's] exercise of his

---

[6]On direct appeal Petitioner further alleged that during the second stage of trial the prosecutor further engaged in disparaging name-calling that was intended to arouse societal alarm and commented on Petitioner's decision not to testify at trial which led the jury to recommended excessive sentences. Response, Ex. B at 20-24. As discussed previously, Petitioner's challenges of prosecutorial misconduct relating to the sentencing stage fail to state a claim for federal habeas relief.

Constitutional right to remain silent and personal attacks that had no relevance except to influence the jury." *Id.* at 2-3. The Court held that such remarks constituted plain error and that the error was "harmless as to guilt, but not harmless with respect to sentencing." *Id.* (citing *Simpson v. State*, 876 P.2d 701 (Okla. Crim. App. 1994)). As stated previously, the Court reduced Petitioner's sentences on Counts One and Two from fifty years to twenty-five years. *Id.*

From the OCCA's opinion and its general citation to *Simpson*, it is not clear what harmless error standard the state appellate court applied in reaching its holding.[7] Thus, the deference to that decision set forth in 28 U.S.C. § 2254(d)(1) and (2) is not applicable, and this Court may exercise its "independent judgment" in deciding the claim. *Battenfield v. Gibson*, 236 F.3d 1215, 1220 (10th Cir. 2001). The harmless error standard to be applied on habeas review is set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *See Webber v. Scott*, 390 F.3d 1169, 1177 (10th Cir. 2004); *Herrera v. Lemaster*, 301 F.3d 1192, 1199 (10th Cir. 2002). Under *Brecht*, federal habeas relief is not available unless there was error which had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. If "grave doubt" exists about the harmlessness of the error, the Court must treat the error as though it had affected the verdict. *See O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).

---

[7]In *Simpson*, the OCCA discussed the scope and process of appellate review of allegations of error that were not preserved at trial and the level of error required for a reversal of a criminal conviction. *Simpson*, 876 P.2d at 695 ("Whatever the label, an error which has no bearing on the outcome of the trial will not mandate a reversal."). The OCCA further held that in order for constitutional error to be deemed harmless, the appellate court must find beyond a reasonable doubt that it did not contribute to the verdict. *Simpson*, 876 P.2d at 701 (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)). In the instant case, the OCCA did not indicate that it applied the *Chapman* "harmless beyond a reasonable doubt" standard, which is the "proper standard for state courts to apply when evaluating instances of constitutional error on direct appeal." *Saiz v. Burnett*, 296 F.3d 1008, 1012(10th Cir. 2002).

A.  <u>Right to Remain Silent</u>

Petitioner alleged in his direct appeal brief that the prosecutor improperly questioned Deputy Mark Vaughn and elicited testimony that Petitioner had invoked his right to remain silent and further requested an attorney in response to his questioning. Response, Ex. B at 11-12.  He also alleged the prosecutor referred to Petitioner's post-arrest silence during closing argument.  *Id.* at 14.

Generally, a prosecutor's improper remark will require reversal of a state conviction only if the remark sufficiently infected the trial, making it fundamentally unfair and, therefore, a denial of due process.  *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 645 (1974).  If, however, the prosecutorial misconduct "directly affects a specific constitutional right" other than the due process right to a fair trial, "a habeas petitioner need not establish that the entire trial was rendered unfair, but rather that the [specific] constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right." *Torres v. Mullin*, 317 F.3d 1145, 1158 (10th Cir. 2003).  Tenth Circuit precedent holds that "[t]he state may not use a defendant's exercise of his right to remain silent to obtain his conviction." *Jones v. Stotts*, 59 F.3d 143, 146 (10th Cir. 1995).[8]  *See also Battenfield v. Gibson*, 236 F.3d 1215, 1225 (10th Cir. 2001).  "The 'mere mention' of petitioner's rights 'is not per se prohibited; rather, it is the prosecutor's exploitation of a defendant's exercise of his right to silence which is prohibited.'" *Pickens v. Gibson*, 206 F.3d 988, 998 (10th Cir. 2000) (quoting *Jones v. Stotts*, *supra*).  The Court must "'determine whether there has been an impermissible comment on a defendant's right to remain silent

---

[8]See U.S. Const. amend. V ("No person ... shall be compelled in any criminal case to be a witness against himself....").

. . . by determining whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the defendant's right to remain silent.  The contested use of the statement must be considered in the context in which it was made." *Id.* (quoting *United States v. Toro-Pelaez*, 107 F.3d 819, 826-27 (10th Cir. 1997) for proposition that the same test applies whether prosecutor is commenting on defendant's post-arrest silence or his decision not to testify at trial).

Nonetheless, any error in permitting the prosecutor to comment upon a petitioner's right to silence is subject to a harmless error analysis.  *Pickens*, 206 F.3d at 998 (citing *Brecht*, 507 U.S. at 628-29); *see also Hamilton v. Mullin*, 436 F.3d 1181, 1187 (10th Cir. 2006).  In assessing harmless error, the Tenth Circuit has identified the following relevant factors:  "(1) the prosecutor's use of the post-arrest silence; (2) whether the defense or prosecution pursued this line of questioning; (3) the amount of evidence indicating guilt; (4) the frequency and force of the reference; and (5) if the defense requested a mistrial or curative instructions." *Sallahdin v. Gibson*, 275 F.3d 1211, 1230-31 (10th Cir. 2002).  In *Sallahdin*, the Circuit Court noted that the first and third of these inquiries are the most important.  *Id.* at 1231.

The trial record shows that Deputy Vaughn testified that on October 19, 2001, he pulled Petitioner's truck over for an expired tag, found that Petitioner had an outstanding arrest warrant in another county, and placed him under arrest. Tr.Vol.I, 17, 22.  Vaughn further testified that he then discovered illegal drugs and syringes in the front of the truck, and before he questioned the passenger in the vehicle, Shannon Miller, he showed

the drugs to Petitioner and read the *Miranda* warning.[9]  Tr.Vol.I, 30-36; 41-42.  Vaughn

testified that Petitioner indicated he understood his rights and did not wish to make a

statement.  Tr.Vol.I, 41. According to Vaughn, Petitioner then requested an attorney, and

as Vaughn turned away, Petitioner made a spontaneous remark to the effect that, "[Ms.

Miller] didn't know anything about this."  Tr.Vol.I, 42.

The admission of Petitioner's spontaneous statement was not challenged at trial

or on direct appeal.[10]   Rather, Petitioner's contention on direct appeal was that the

prosecutor continued to refer to Petitioner's request for an attorney as follows:

> Q: [Prosecutor] And your specific question was what when he said, "I'll
> have to talk to my lawyer first"?  What was your specific question?
>
> A: [Mr. Vaughn] I basically just concurred with it.  I really didn't ask him
> a question after that.
>
> Q: [Prosecutor] No, no.  I meant before that.  Didn't you ask him whose
> methamphetamines?
>
> A: [Mr. Vaughn] I asked whose drugs they were.
>
> Q: [Prosecutor] Whose drugs are these, and he says, "I can't answer - -

Tr.Vol.I, 43.  At this point in the questioning, defense counsel objected as to the form of

the question and the court instructed the prosecutor to rephrase the question, after which

the prosecutor continued:

---

[9]*See Miranda v. Arizona*, 384 U.S. 436 (1966) (a suspect in custody has a constitutional right under the Fifth Amendment to remain silent).

[10]In any event, any objection to the admission of Petitioner's voluntary statement would likely have been rejected by the state courts.  Where a defendant has invoked his right to silence following a *Miranda* warning, the admissibility of any further statements by the suspect depends "on whether his right to cut off questioning was scrupulously honored."  *Michigan v. Mosley*, 423 U.S. 96, 104 (1975).  If an individual expresses his desire to remain silent, all interrogation must cease.  *Id.* at 100.  However, if the suspect, and not the police, reinitiates contact and makes voluntary statements, the admission of such statements does not violate a defendant's right to remain silent.  *United States v. Glover*, 104 F.3d 1570, 1581 (10th Cir. 1997).

> Q: [Prosecutor] What was your question to Mr. Paddock that led him to say, "I would like to consult with my lawyer first"?
>
> A: [Mr. Vaughn] I basically just asked him if these are - - if these are his drugs, if these belonged to him.
>
> Q: [Prosecutor] Okay.  He answered with the statement about the lawyer?
>
> A: [Mr. Vaughn] Yes.

Tr.Vol.I, 43-44.  Vaughn again testified that as he turned and began to walk away, Petitioner voluntarily stated that "she had nothing to do with this."  Tr.Vol.I, 44. Petitioner alleged that the improper questioning continued when the prosecutor asked Deputy Vaughn about his response to Petitioner's statement that Ms. Miller "did not know anything" and Vaughn stated:

> I asked [Petitioner] who's (sic) methamphetamine it was.  He said he had better talk to his attorney first.  And as I - - and I didn't ask any more questions.  I turned away.  And he stated she didn't know anything about this.  I then asked about what, and [Petitioner] was silent.  And I didn't say anything else after that.

Tr.Vol.I, 46.

Petitioner claimed on direct appeal that the prosecutor again brought up Petitioner's silence in the following comments during first stage closing argument:

> Where was the brown pouch with the 12 grams of methamphetamine found?  It's in the floorboard, more to the passenger side.  It's a bench seat. Front part up in the cab.  What did the defendant say when Deputy Vaughn found this, showed it to the defendant, said whose methamphetamine is this?  His reply concerned wanting getting a lawyer.

Tr.Vol.II, 291.  These comments, however, provided the context for the prosecutor's argument regarding Petitioner's subsequent voluntary statement regarding his girlfriend's lack of knowledge about the drugs which had been discovered.

Petitioner acknowledged in his direct appeal brief that the prosecutor pointed out to the jury that Petitioner's silence could not be held against him, but he argued that the following closing remarks by the prosecutor undercut such statement:

> Shannon Miller told you she didn't know that there were additional drugs here. The defendant's statement indicates he had knowledge. And I'd urge you to look at the constructive possession instruction that Judge Worthington has given you. He [Petitioner] had knowledge it was there. Why? Why what a curious thing to say. If you don't know anything - - if you don't know anything about something, and somebody said, hey, whose is this? You're not going to say, well, he doesn't know anything about that. You're going to tell what you know about that. The defendant chose not to. You cannot hold it against him. But he said she doesn't know anything about it. That speaks volumes as to whether he knew it was there.

Tr.Vol.II, 292.

To the extent the prosecutor's comments erroneously referred to Petitioner's right to silence and to consult an attorney before talking to the police,[11] such error does not entitle Petitioner to habeas relief under *Brecht*, *supra*. Considering the factors listed by the Tenth Circuit in *Sallahdin*, *supra*, the undersigned finds that Petitioner has not made the required showing. In context, the prosecutor's questions demonstrate Petitioner's knowledge of the illegal drugs by his spontaneous statement that "she" did not know

---

[11]Petitioner also claimed on direct appeal that the following statements made by the prosecutor during first stage closing argument referred to Petitioner's post-arrest silence:

> Judge Worthington gives you a whole laundry list to use with your life experience in deciding if somebody is telling the truth or not. And, ladies and gentlemen, I don't think her [Ms. Miller's] tears as a result of the crime she committed were crocodile tears or fake tears or whatever you call them. I think they were genuine. The defendant, however, has shown no tears.

Tr.Vol. II, 283. However, the undersigned finds that these remarks do not constitute a direct comment on Petitioner's right to silence, but refer to his courtroom demeanor as compared with that of Shannon Miller during her testimony. In any event, as discussed herein, even if these remarks could be construed as an improper comment on Petitioner's silence, he has failed to show that he was prejudiced from such remark.

anything about "this."   Additionally, the prosecutor only referred to Petitioner's invocation of his right to silence and counsel during the above-described questions of Deputy Vaughn and briefly in closing argument.   None of these comments were objected to by defense counsel, and no request was made that the trial court cure any improper statements with instructions to the jury.

Most significantly, the evidence of Petitioner's guilt presented at trial was substantial, such that the prosecutor's references to Petitioner's silence and request for counsel were beyond doubt harmless error.   Deputy Vaughn testified that he pulled over the vehicle being driven by Petitioner because police dispatch informed him that the vehicle's tag was expired.   Tr.Vol.I, 18-20.   Vaughn testified that in response to his request for Petitioner's driver's license, Petitioner stated that he did not have a license and that he had purchased the truck the day before.   Tr.Vol.I, 20-21.   Vaughn also learned from dispatch that Petitioner's license was suspended and he had an outstanding arrest warrant from Noble County.   *Id.*   Vaughn testified that he then placed Petitioner under arrest and as he approached the passenger side of the truck, he observed Ms. Miller listening to a police scanner which was tuned to Logan County Sheriff's department frequencies. Tr.Vol.I, 23.   Vaughn testified that after he directed Ms. Miller to exit the truck, he found on the bench seat of the truck two items commonly used in the process of manufacturing methamphetamine – a four-pound box of pickling salt, Tr.Vol.I, 50-52, and a set of scales that would weigh items up to seven and one-half ounces.   Tr.Vol.I, 27; Tr.Vol.II, 119-20.   Under the passenger side but close to the middle of the bench seat, Vaughn found a brown pouch containing syringes, a spoon that field-tested positive for

14

methamphetamine and a baggie containing a powder that field-tested positive for methamphetamine; the methamphetamine was later determined to weigh approximately 12 grams and did not have a tax stamp. Tr.Vol.I, 30-31, 81-82; Tr.Vol.II, 111, 163, 173, 191. Vaughn testified that he also found under the truck seat a plastic baggie holding smaller baggies which contained a residue that field-tested positive for methamphetamine, and one small baggie contained numerous blue pills which were later determined to be Diazepam. Tr.Vol.I, 34-36, 48; Tr.Vol.II, 172. Further, Vaughn testified that officers found a small black bag on the floor of the truck containing a spoon that field-testified positive for methamphetamine and numerous small unused baggies that were consistent with distributing illegal drugs. Tr.Vol.I, 39-40.

Vaughn began a search of the back of the truck and found three briefcase/satchels, one of which contained the driver's license and credit cards of Gary Majors. Vaughn determined that Majors had reported to the Oklahoma City police that these and other items had been stolen on October 18, 2001, while he was staying at a Best Western motel.[12] Tr.Vol.I, 60-63. Additional law enforcement officers conducted an inventory search of the back of the truck and found numerous items that were consistent with the manufacture and distribution of methamphetamine. These items included three ephedrine tablets, three cans of starter fluid, drain opener, rubbing alcohol, glass cleaner,

---

[12]Mr. Majors testified that he had checked into the Best Western Motel in Oklahoma City on October 18 for a business meeting and that numerous items related to his business were stolen from his room, including loose gemstones and watches worth approximately forty to sixty thousand dollars and travel certificates worth approximately twenty-five thousand dollars. Tr.Vol.II, 136-45. A manager for Best Western motel testified that the room assigned to Mr. Majors on October 18, 2001, had inadvertently also been given to four other individuals, including Petitioner, but that Petitioner had been reassigned to a different room when the mistake became apparent. Tr.Vol.II, 150-53. Petitioner had a Best Western motel key card in his wallet. Tr.Vol.I, 62, 66.

two portable sprayers, glass jars with tubing apparatus, a portable heater and two gas cans containing an unknown acid or liquid.  Tr.Vol.I, 57-58; Tr.Vol.II, 101-05, 206-15. In Petitioner's medicine bag officers found syringes, ephedrine and vitamin E.  Tr.Vol.I, 67-68.  Officers also found disposable body suits, a bag containing a fuel filter, a green pressurized tank with a bluish discoloration on the valve consistent with having contained anhydrous ammonia, a ziplock bag full of coffee filters and a bottle of Vitablend - a substance commonly used as a cutting agent in manufacturing methamphetamine.  Tr.Vol.II, 101-05, 117-18, 196-204.  Officer Mark Bruning, a member of the District Nine Drug Task Force, testified that he participated in the inventory search of Petitioner's truck and that the items found were consistent with the "Nazi" or "cold cook" method of manufacturing methamphetamine.  Tr.Vol.II, 183-87, 195.  Bruning also testified that based on his training and experience, 27 grams of methamphetamine, the amount found in Petitioner's truck and on Miller's person, was not consistent with personal use.  Tr.Vol.II, 193.

Shannon Miller, Petitioner's co-defendant who was age twenty-two at the time of trial, testified that at the time of her arrest, she was in a romantic relationship with Petitioner, who was age forty-seven, and that for approximately two months prior to their arrest she and Petitioner were in an agreed arrangement to manufacture and sell methamphetamine.  Tr.Vol.II, 247-51.[13]  Miller testified that she and Petitioner had rented a room at the Best Western Motel the night before they were arrested and that when they

---

[13]Ms. Miller also testified that she had been jointly charged with conspiracy to manufacture methamphetamine and possession of methamphetamine with intent to distribute and that she was testifying pursuant to a plea negotiation with the State for a recommended sentence of one year in a Department of Corrections boot camp followed by probation.  Tr.Vol.I, 248-49.

entered the room with the key they had been given, it was full of stuff indicating that the room was being used by someone else.  Tr.Vol.II, 252.  She propped the room door open as they were leaving, and then she returned and took property which included "[w]atches and stuff like that."  *Id.*  Miller testified that she placed the items in Petitioner's truck and told him that she had done so.  Tr.Vol.II, 251-52, 260.  She further testified that as they were being pulled over by the police, Petitioner handed her a pouch of methamphetamine that had been on the truck seat and told her to hide it.[14]  As to her role in the manufacturing of methamphetamine with Petitioner, Ms. Miller testified that she helped buy pills, such as pseudoephedrine, and batteries.  Tr.Vol.II, 257.

The prosecutor's reference to Petitioner's silence and request for an attorney was marginal in comparison to the substantial evidence of Petitioner's guilt.  Additionally, the OCCA remedied the impact of any influence the prosecutor's comments may have had on jurors by modifying Petitioner's sentences in Counts One and Two.  *See Carbray v. Champion*, 905 F.2d 314, 317-18 (10th Cir. 1990).  Under these circumstances, the undersigned finds that to the extent the prosecutor's comments on Petitioner's right to silence and his right to an attorney were error, such conduct did not have "substantial and injurious effect or influence in determining the jury's verdict" of guilt during the first stage of Petitioner's trial.  *Brecht*, 507 U.S. at 631.  Accordingly, Petitioner is not entitled to habeas relief on this basis.

---

[14]Ms. Miller testified that she put the pouch containing the illegal drugs inside her body, and that as she exited the sheriff's vehicle after being transported to the jail, she pushed and the pouch fell out. Tr.Vol.II, 254.  Sheriff Randy Richardson testified that Miller advised him that she had methamphetamine inside her vaginal area, and upon their arrival at the jail, a baggie containing a white powdering substance fell out of her pants leg.  Tr.Vol.II, 128-29.  Evidence established that the baggie obtained from Ms. Miller contained 15.1 grams of methamphetamine, and no tax stamp was affixed to the drug.  Tr.Vol.II, 173, 191.

B. <u>Other Claims of Prosecutorial Misconduct</u>

In his direct appeal brief, in addition to challenging the prosecutor's comments on his right to remain silent, Petitioner argued that other instances of prosecutorial misconduct deprived him of a fair trial. Response, Ex. B at 15-25. The undersigned has categorized these claims relating to the first stage of trial into the following categories: (1) arguing facts not in evidence during closing argument and (2) making personal attacks on Petitioner. *See* Response, Ex. B at 15-18 and 18-20.

As stated previously, the OCCA deemed any erroneous statements made by the prosecutor harmless as to Petitioner's guilt. Response, Ex. C at 3. Having already considered those claims of prosecutorial misconduct that infringed on a specific constitutional right and were not subject to the fundamental fairness test, Petitioner's other allegations of prosecutorial misconduct, which do not implicate a specific constitutional right, are reviewed only for a violation of due process. *See Patton v. Mullin*, 425 F.3d 788, 811 (10th Cir. 2005) (citing *Darden v. Wainwright*, 477 U.S. 168 (1986)). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Patton*, 425 F.3d at 811 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)). To be entitled to habeas relief, a petitioner must establish that the prosecution's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Patton*, 425 F.3d at 811 (citing *Donnelly*, 416 U.S. at 643). Such a determination may be made only after "tak[ing] notice of all the surrounding circumstances, including the strength of the state's

case." *Coleman v. Brown*, 802 F.2d 1227, 1237 (10th Cir. 1986).  Petitioner must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to the make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 643; *Patton*, 425 F.3d at 811.   Additionally, the fact that defense counsel did not object to the prosecutor's statements discussed below is significant to the fundamental fairness analysis.  *See Walker v. Gibson*, 228 F.3d 1217, 1241 (10th Cir. 2000) ("Counsel's failure to object to many of the comments, while not dispositive, is relevant to a fundamental fairness assessment.") (citation omitted); *Trice v. Ward*, 196 F.3d 1151, 1167 (10th Cir. 1999) (same).

    1.  Arguing Facts not in Evidence

On direct appeal Petitioner first argued that during first stage closing argument the prosecutor portrayed him as an "evil being" by arguing facts not in evidence with respect to the charge of knowingly concealing stolen property.   Response, Ex. B at 15-18.  In the first instance Petitioner challenged the prosecutor's statement that Ms. Miller knew that Petitioner's truck was filled with "[t]housands and thousands and thousands of dollars worth of stolen property."   Tr.Vol.II, 282.   Petitioner also challenged the following statement:

> The concealing stolen property.  Did the defendant know the property was stolen?  Yes.  Why?  She told him.  I suspect his involvement may have been a little more integral in that.

Tr.Vol.II, 293.   According to Petitioner, these statements implied that Petitioner encouraged Ms. Miller to steal many thousands of dollars worth of property and misled the jury.

A prosecutor may speculate during closing argument if the remarks involve reasonable inferences based on the evidence. *See Hooper v. Mullin*, 314 F.3d 1162, 1172 (10th Cir. 2002); *Moore v. Gibson*, 195 F.3d 1152, 1172 (10th Cir. 1999). Here, evidence exists to support the prosecutor's inferences. Evidence presented at trial established that the items in question were in fact worth tens of thousands of dollars, Tr.Vol.II, 136-45, that Ms. Miller knew that certain of the items had value, Tr.Vol.II, 252, and that she made Petitioner aware that the items had been placed in the back of his truck. Tr.Vol.II, 260. Based on the testimony, the prosecutor's statements involved a reasonable inference from the evidence.

As discussed above, the evidence of guilt was substantial, and it was reasonable to infer that Petitioner was at the very least aware that there was stolen property of significant value in the back of his truck. Therefore, the prosecutor's statements fall within the wide latitude of argument allowed to prosecutors. Accordingly, the undersigned finds that Petitioner fails to show that his trial was rendered fundamentally unfair by the challenged statements.

2. Personal Attacks on Petitioner

Petitioner also alleged on direct appeal that the prosecutor made personal attacks on Petitioner by "calling him names, arousing societal alarm, and suggesting [Petitioner] was some sort of cradle-robber." Response, Ex. B at 18. In support of these allegations, Petitioner alleged that in reminding jurors of Ms. Miller's concealment of the drugs on her person and that Petitioner told her to hide the drugs, the prosecutor encouraged the jury to think about the kind of relationship they were in, stating "And this is from a man

who's old enough to be her father says hide it."   *Id.* at 19 (citing Tr.Vol.II, 292-93). According to Petitioner, the prosecutor's continued references to Ms. Miller's age portrayed him as "some sort of cradle-robbing pervert."   *Id.*[15]

The undersigned finds that these challenged statements do not constitute prosecutorial misconduct such as would violate Petitioner's right to fundamental due process.   Evidence presented at trial established that there was a large age difference between Petitioner and Ms. Miller, that pursuant to Petitioner's influence and direction she purchased pseudoephedrine pills, was involved in a conspiracy to manufacture methamphetamine, and had hidden methamphetamine inside her body.   Thus, the challenged comments did not refer to something completely outside the evidence or the jury's own observations.

Finally, in light of the substantial evidence of Petitioner's guilt presented at his trial, the undersigned finds that none of these instances of alleged prosecutorial misconduct so infected his trial with unfairness as to render his conviction a denial of due process.   *Donnelly v. DeChristoforo*, 416 U.S. at 645.   Petitioner is not entitled to habeas relief on this basis.

---

[15]Petitioner also cited the following statements as continuing personal attacks:

But then again, [Petitioner] is not a Colombian cartel member, but he is a drug manufacturer.  And he did conspire with a girl young enough to be his daughter.  Why? Control, manipulate.

. . .

Far from being chivalrous, the defendant uses that 20-year-old. Far from being chivalrous.

. . .

He's a predator preying on those - - preying on his co-conspirators.

Tr.Vol.II, 303-05.

## **RECOMMENDATION**

For these reasons, it is the recommendation of the undersigned Magistrate Judge that the petition for writ of habeas corpus be denied and that the State of Oklahoma be dismissed.  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by the 7th of December, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal issues contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 17th day of November, 2006.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE